STATE of Tennessee, Appellee,

v.

Terry T. LEWIS, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

March 17, 2000.

Permission to Appeal Denied by
Supreme Court Oct. 30, 2000.

Dwight E. Scott, Attorney at Law, Nashville, TN, for the appellant.

Paul G. Summers, Attorney General & Reporter, Elizabeth T. Ryan, Asst. Attorney General, Victor S. Johnson, III, District Attorney General, Pamela Anderson, T.J. Haycox, Asst. District Attorneys General, Nashville, TN, for the appellee.

## OPINION

WITT, Judge.

The defendant, Terry T. Lewis, appeals from his convictions of first degree murder and attempted robbery, which he received at the conclusion of a jury trial in the Davidson County Criminal Court. Lewis is presently serving an effective sentence of life in the Department of Correction. In this direct appeal, he raises four issues for our consideration:

1. Whether the evidence presented at trial sufficiently supports his convictions.

2. Whether the attempted robbery count of the indictment sufficiently alleges attempt.

3. Whether the trial court properly denied his motion to suppress his statement.

4. Whether the trial court should have instructed the jury on attempted theft as a lesser-included offense of attempted robbery.

We have reviewed the record, the briefs of the parties, and the applicable law, and we find no error requiring reversal. Accordingly, we affirm the judgment of the trial court. However, we remand for a correction of the judgment form in Count Two, the attempted robbery conviction.

The most interesting issue presented in this appeal is the fourth, which gives us the opportunity to consider the law as it relates to lesser-included offenses following our supreme court's recent pronouncements in *State v. Burns*, 6 S.W.3d 453 (Tenn.1999). Specifically, this case gives us the opportunity to consider the extent of the trial court's obligation, without request, to charge lesser-included offenses, despite evidence of the greater offense. We hold that where an offense is lesser-included under *Burns*, but there is no evidence that reasonable minds could accept as to the existence of the lesser-included offense, as opposed to the greater, the trial court acts properly in not giving the instruction on the lesser-included offense.

In the light most favorable to the state, on the afternoon of July 10, 1996, the defendant Lewis and Teresse Patterson were riding around Nashville in an older model blue Cadillac with bullet holes on the driver's side. Patterson was driving, and Lewis was in the front passenger seat. The two were drinking liquor. There was a Glock semi-automatic weapon in the car which belonged to the individual from whom Patterson had borrowed the Cadillac. Lewis began talking about "getting paid," which is slang for committing a robbery or selling drugs; however, Patterson was recently paroled and not anxious to engage in any criminal activity.

Lewis wanted to go through the Haynes Park area, and Patterson drove to that location. While they were in this area, they encountered the victim, Eugene Blakemore, who was walking on Haynes Park Drive. The victim was wearing a large, gold, herringbone necklace, and Lewis said he wanted to rob the victim. Patterson implored Lewis not to shoot the victim, and Lewis said, "I'm not going to shoot him." Patterson turned around in a driveway so that the victim would be on Lewis' side of the Cadillac. Patterson drove slowly to the victim, and the defendant said, "You know what this is, give me what you got. If you run I'm going to shoot you." Lewis had the Glock pistol in his hand, and when the victim saw it, he ran. Lewis then fired a single shot at the victim, fatally striking him in the back of the head. The victim fell, and Patterson and Lewis left the scene in the Cadillac.

Winston Davidson, whose wife was a cousin of the victim, witnessed the encounter between Patterson, Lewis and the victim. Davidson was standing inside his home on Haynes Park Drive looking out the front door. The crime occurred in front of Mr. Davidson's house, and when the victim was shot, he fell in Mr. Davidson's yard.

Through investigative work, the police recovered the Cadillac the following day. The vehicle was processed for fingerprints, and prints matching those of the defendant were found on the rain guard above the passenger side window.

A 45–caliber shell casing was recovered from the scene of the crime. During the subsequent investigation, police officers went to Lewis's apartment approximately five days after the crime. As the officers were coming down the stairs outside Lewis's apartment, they found another 45–caliber shell casing. Lewis had arrived at his apartment after the officers, and one of the officers testified that he believed Lewis had approached the apartment from the direction in which the shell casing was found. The two shell casings were compared by a forensic scientist employed by the Tennessee Bureau of Investigation, who opined that both shells were of the same manufacture and caliber, and both had been fired from the same weapon. The forensic scientist further opined that the weapon was most likely of Glock manufacture.

Both Patterson and Lewis were interviewed by the authorities, and both initially denied any involvement in the crime. The defendant acknowledged he had at some point been inside the Cadillac with Patterson, but he claimed this was not on the day of the crime. Eventually, Patter-

son admitted his culpability, and he gave the authorities information about Lewis's involvement. Patterson testified for the state at trial, and he admitted that he hoped to gain a favorable sentencing recommendation from the state for his testimony.

Lewis finally admitted that he shot the victim. However, he told the authorities that he had approached the victim to inquire whether he was the same individual with whom he had been in a recent altercation in a nightclub. Lewis said that he thought the victim was reaching for a weapon, and Lewis himself was holding the Glock that was in the car. Lewis claimed that as he was taking out the Glock or putting it up, it accidentally discharged, striking the victim. Lewis claimed at one point that the weapon discharged when it struck the car window, but he also said he had his arm straight out.

The defense presented no evidence at trial. However, through cross-examination of the state's witnesses, the defense pursued a theory of accidental shooting during the course of an encounter between the defendant and someone with whom he had been in a previous confrontation. The defense strongly challenged the state's evidence that the killing had been intentional and that the defendant was in the process of perpetrating a robbery when he killed the victim.

Upon consideration of the evidence, the jury found the defendant guilty of premeditated murder, felony murder in the attempt to perpetrate a robbery, and attempted robbery. The trial court merged the murder convictions and imposed a life sentence. Following a sentencing hearing, the trial court imposed a two-year sentence for attempted robbery, to be served concurrently to the life sentence.

Upon this record, the defendant appeals.

## I

██ In his first issue, the defendant challenges the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn.1985); Tenn.R.App.P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn.Crim.App.1990).

██ In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.Crim. App.1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn.Crim.App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

## A. Attempted Robbery

██ In their briefs, both the defendant and the state characterize the defendant's conviction on Count Two as one of attempted aggravated robbery. The indictment charges that the defendant "did attempt to intentionally or knowingly take from the person of Eugene Blakemore property of value, by violence or putting Eugene Blakemore in fear and said at-

tempted robbery was accomplished with a deadly weapon, in violation of Tennessee Code Annotated § 39–12–101 [the attempt statute]...." At the close of the evidence, the court instructed the jury on the offense of attempted robbery, but not attempted aggravated robbery. The transcript reflects that the jury returned a verdict of guilty of attempted robbery. The judgment form reflects that the defendant was convicted of "attempted robbery with a deadly weapon," in violation of Code section 39–12–101 (the attempt statute), which it characterizes as a Class C felony. However, the two-year sentence imposed is within the range for Class D or E felonies, but not a Class C felony. *See* Tenn.Code Ann. § 40–35–111(b) (1997). At the sentencing hearing, the trial court characterized the conviction as attempted robbery and used the range for Class D felonies to determine the defendant's sentence on this count. The court questioned the assistant district attorney whether the crime was attempted robbery and the range of punishment was two to four years as a Class D felony, and she acknowledged that this was correct. From these indications in the record, we conclude that the defendant was convicted of attempted robbery, the Class D felony, not attempted aggravated robbery, the Class C felony. Accordingly, our sufficiency review is of the crime of attempted robbery.

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn.Code Ann. § 39–13–401 (1997). An attempt is committed where

A person ... acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the

result without further conduct on the person's part; or

(3) Acts with intent to complete the course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn.Code Ann. § 39–12–101(a) (1997).

In the present case, the evidence of attempted robbery consists of Patterson's and Davidson's eyewitness accounts of the crime. Patterson's testimony explicitly implicates the defendant's intent to rob the victim, while Davidson witnessed events consistent with Patterson's account of the crime.

■■■■ The defendant argues that Patterson's testimony was not adequately corroborated. In Tennessee, a conviction may not be based upon the uncorroborated testimony of an accomplice. *State v. Bigbee,* 885 S.W.2d 797, 803 (Tenn.1994). An accomplice is an individual who knowingly, voluntarily and with common intent participates with the principal offender in the commission of an offense. *State v. Lawson,* 794 S.W.2d 363, 369 (Tenn.Crim.App. 1990). When the facts are undisputed regarding a witness's participation in the crime, whether he is an accomplice is a question of law for the trial court. *State v. Perkinson,* 867 S.W.2d 1, 7 (Tenn.Crim. App.1992). However, when the facts are disputed or susceptible to different inferences, it is a question for the jury. *Conner v. State,* 531 S.W.2d 119, 123 (Tenn. Crim.App.1975). The jury determines whether an accomplice's testimony has been sufficiently corroborated. *Pennington v. State,* 478 S.W.2d 892, 898 (Tenn. Crim.App.1971). The general rule is that

there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the

defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence be slight and entitled, when standing alone, to but little consideration.

*Hawkins v. State*, 4 Tenn.Crim.App. 121, 133, 469 S.W.2d 515, 520 (Tenn.Crim.App. 1971) (citations omitted).

■ There is no reasonable dispute that Patterson was an accomplice. Further, the record reflects adequate corroboration of his testimony. Patterson testified in detail about the events of July 10, 1996. Presumably, the defendant challenges Patterson's claims that the defendant talked repeatedly about "getting paid," that the defendant announced his intent to rob the victim, and that the defendant made statements to the victim announcing his intent to rob him. These statements were made in the presence of Patterson and the defendant alone, or they were made in Patterson's presence to the now-deceased victim. Thus, there is no independent "witness" to them.

However, that does not end our inquiry. "It is not necessary that the corroboration extend to every part of the accomplice's evidence." *Id.*, 469 S.W.2d at 520. Patterson's account of driving down Haynes Park Drive, seeing the victim, turning around so the victim would be on the defendant's side of the car, the defendant speaking to the victim, the victim running away, and the defendant shooting the vic-

tim, was consistent with the version of events to which independent eyewitness Davidson testified. Further, the defendant admitted in his statement that he and Patterson were out looking for victims to rob, although he denied having the intent to rob Eugene Blakemore. While this corroboration is not conclusive, it is not required to be. *Id.*, 469 S.W.2d at 520. The defendant admitted he was the shooter. We hold that the corroborating evidence is sufficient to connect the defendant to the commission of the offense of attempted robbery.

However, due to the error in the judgment form reflecting the offense of "attempted robbery with a deadly weapon" and Class C felony designation, it is necessary to remand this case to the trial court for correction of the judgment form on Count Two.

## B. Felony Murder

■ The defendant also claims the evidence is insufficient to sustain a conviction of felony murder. As applicable to this defendant, felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any ... robbery...." Tenn.Code Ann. § 39–13–202(2) (1997).

The defendant acknowledges that he killed the victim, and all of the evidence supports his admission. As discussed above, the evidence sufficiently supports the conviction of attempted robbery. The evidence presented at trial demonstrates that the defendant was in the process of attempting to rob the victim when he fired the fatal shot. The evidence sufficiently supports this conviction.

## C. First Degree Murder

Finally, the defendant claims there is insufficient evidence that he is guilty of first degree premeditated murder. As applicable to the case at bar, first degree murder is "a premeditated and intentional killing of another...." Tenn.Code Ann.

§ 39–13–202(a)(1) (1997). " '[P]remeditation' is an act done after the exercise of reflection and judgment." Tenn.Code Ann. § 39–13–202(d) (1997); *see State v. Brown,* 836 S.W.2d 530, 541 (Tenn.1992) (premeditation is the process "of thinking about the proposed killing before engaging in the homicidal conduct"). "It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." Tenn.Code Ann. § 39–13–202(d) (1997). With respect to this crime, a person acts intentionally "with respect ... to a result of the conduct when it is the person's conscious objective or desire to ... cause the result." Tenn. Code Ann § 39–11–302(a) (1997).

▆▆▆▆ In Tennessee, a homicide, once established, is presumed to be second degree murder. *See, e.g., State v. West,* 844 S.W.2d 144, 147 (Tenn.1992); *Brown,* 836 S.W.2d at 543. The state bears the burden of establishing premeditation in order to elevate the crime to first degree murder. *See, e.g., West,* 844 S.W.2d at 147; *Brown,* 836 S.W.2d at 543. Premeditation may be inferred from the circumstances surrounding the crime. *See, e.g., State v. Pike,* 978 S.W.2d 904, 914 (Tenn.1998), *cert. denied,* 526 U.S. 1147, 119 S.Ct. 2025, 143 L.Ed.2d 1036 (1999). Some facts which may be indicative of the existence of premeditation include the use of a deadly weapon on an unarmed victim, the shooting of the victim after he had turned to retreat or escape, the lack of provocation on the part of the victim, the defendant's declarations of his intent to kill, and the defendant's failure to render aid to the victim. *See, e.g., State v. Bland,* 958 S.W.2d 651, 660 (Tenn.1997), *cert. denied* 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 686 (1998); *State v. Martin,* 702 S.W.2d 560, 562–63 (Tenn.1985), *overruled on other grounds, Brown,* 836 S.W.2d at 543; *State v. Fugate,* 776 S.W.2d 541, 545 (Tenn.Crim.App.1988).

▆▆▆ In the light most favorable to the state, the facts sufficiently establish premeditation and intent. The defendant re-peatedly discussed "getting paid." When he saw the victim, he told Patterson he wanted to rob the victim, and Patterson turned the car around so the defendant could accomplish the robbery. As the defendant attempted the robbery, he announced his intent to kill the victim if he did not cooperate. His words were, "You know what this is, give me what you got. *If you run I'm going to shoot you.*" (Emphasis added.) The victim said nothing in return, but turned and fled, and when he was approximately 20 feet from the car in which the defendant was sitting, he was felled by the defendant's bullet. Rather than assisting the victim, as one might expect the shooter to do in an alleged "accidental" shooting, the defendant fled the scene.

Accordingly, the jury's verdict of guilt is sufficiently supported by the evidence.

In so holding, we have rejected the defendant's argument that in view of the evidence of provocation, that is, the victim's and the defendant's alleged earlier altercation in a nightclub, this homicide is more properly characterized as voluntary manslaughter. To so find would require us to discard the jury's resolution of questions of witness credibility, weight and value of the evidence, and to substitute our own inferences from the evidence. The law requires otherwise. *See Cabbage,* 571 S.W.2d at 835; *Liakas,* 199 Tenn. at 305, 286 S.W.2d at 859; *Farmer,* 574 S.W.2d at 51.

## II

Second, the defendant alleges the attempted robbery count of the indictment is insufficient. In pertinent part, the indictment alleges that the defendant "did attempt to intentionally or knowingly take from the person of Eugene Blakemore property of value, by violence or putting Eugene Blakemore in fear and said attempted robbery was accomplished with a deadly weapon, in violation of Tennessee Code Annotated § 39–12–101 [the attempt

statute].... " Lewis claims this indictment insufficiently alleges an attempt; he claims it fails to allege an overt act done toward the commission of the offense.

■■■ A lawful accusation is a condition precedent to jurisdiction. *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn.Crim. App.1979). A judgment obtained in the absence of an indictment alleging each essential element of the offense is a nullity. *McCracken v. State*, 489 S.W.2d 48, 53 (Tenn.Crim.App.1972). A defendant is entitled to know "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Tennessee law further requires that an indictment

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment....

Tenn.Code Ann. § 40–13–202 (1997). Furthermore, the purpose of an indictment is threefold. It "must provide a defendant with notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy." *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn.1991); *see also State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997).

■■■ The defendant is correct that an indictment charging an attempted crime must allege some overt act committed toward the commission of the offense. *See Gervin v. State*, 212 Tenn. 653, 657, 371 S.W.2d 449, 451 (1963); *State v. Michael K. Christian, Jr.*, No. 03C01–9609–CR–00336, slip op. at 13, 1998 WL 125562 (Tenn.Crim.App., Knoxville, March 23, 1998), *perm. app. denied* (Tenn.1999). In the present case, the indictment alleges that the defendant employed violence or placed the victim in fear and that he used a deadly weapon. These allegations illustrate overt action by the defendant toward

the commission of the crime. *Cf. State v. Dock Battles*, No. 02C01–9501–CC–00019, slip op. at 3, 1995 WL 702786 (Tenn.Crim. App., Jackson, Nov. 29, 1995) (indictment sufficiently alleged an overt act toward the crime of attempted burglary through the defendant's attempt to enter the habitation of another with the intent to commit theft), *perm. app. denied* (Tenn.1996).

## III

Third, the defendant claims the trial court erred in denying his motion to suppress the evidence obtained following his arrest. Specifically, he claims the arrest was illegal because the arrest warrant was issued in the face of an insufficient showing of probable cause, and therefore, the trial court should have ruled that his statement following the arrest was inadmissible.

■■■ Arrest warrants may only issue upon a showing of probable cause. U.S. Const. amend. IV; Tenn. Const., art. I, § 7; Tenn.Code Ann. § 40–6–205 (1997); Tenn.R.Crim.P. 4(a); *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *State v. Jacumin*, 778 S.W.2d 430, 435 (Tenn.1989). The magistrate's or clerk's finding of probable cause "shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Tenn.R.Crim.P. 4(b). Probable cause is "a reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn.1998) (citing *Lea v. State*, 181 Tenn. 378, 381, 181 S.W.2d 351, 352 (1944)).

■■■ That said, however, an arrest warrant is not required in order to effectuate an arrest for a felony offense. *See* Tenn. Code Ann. § 40–7–103(a)(3) (1997). An officer may effect a warrantless arrest where a felony has been committed and

the officer has probable cause to believe the person to be arrested has committed the crime. *Id.; State v. Marshall,* 870 S.W.2d 532, 538 (Tenn.Crim.App.1993). Accordingly, the proper inquiry in the case at bar is not whether the warrant was lawful, but whether the arrest itself was lawful. *See Harris v. State,* 206 Tenn. 276, 287, 332 S.W.2d 675, 680 (1960); *Daugherty v. State,* 478 S.W.2d 921, 922 (Tenn. Crim.App.1972).

In order to effectuate a warrantless arrest, the arresting officers must have probable cause. *State v. Bridges,* 963 S.W.2d 487, 491 (Tenn.1997) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Jacumin,* 778 S.W.2d 430, 431 (Tenn.1989); Tenn.Code Ann. § 40–7–103(a)). Probable cause in the context of a warrantless arrest "exists, if at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Bridges,* 963 S.W.2d at 491 (quoting *Beck,* 379 U.S. at 91, 85 S.Ct. at 225). If the arresting officers rely in part on information from an informant from the criminal milieu, they must be able to demonstrate that the informant (1) has a basis of knowledge and (2) is credible or his information is reliable. *See id.; State v. Jacumin,* 778 S.W.2d 430, 436 (Tenn.1989) (adopting two-prong test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the so-called *Aguilar–Spinelli* test); *cf. State v. Stevens,* 989 S.W.2d 290, 293–94 (Tenn.1999). On the other hand, the information contribut-

ing to the existence of probable cause has been gathered from an ordinary citizen, no showing of the informant's basis of knowledge and veracity is required. *See State v. Melson,* 638 S.W.2d 342, 354–56 (Tenn. 1982).

Thus, we consider whether the evidence of record demonstrates that Detective Postiglione had probable cause to arrest the defendant at the time he did so.[1] The record reflects that Detective Postiglione had detailed statements from Winston Davidson, a bystander who witnessed the crimes, and Teresse Patterson, the defendant's accomplice. Both witnesses described the events of the crimes, and their accounts were consistent. While Davidson was unable to provide a positive identification of the defendant, Patterson provided this crucial information as well as evidence of the defendant's intent and motive. Other evidence gathered prior to the defendant's arrest included shell casings from the crime scene and a common area outside the defendant's apartment, a match between the type of shell casings and the weapon from which both had been fired, the vehicle used during the crime, the defendant's fingerprints on the vehicle in a location consistent with the eyewitness descriptions of where the defendant had been sitting at the time of the crimes, and accounts of other individuals who had seen Patterson driving the vehicle on the day of the crime.

Winston Davidson was a resident of the neighborhood in which the crime occurred, who happened to be looking out his front door as the crime transpired. There is absolutely no indication he was from the criminal milieu or received any remuneration from the police for his assistance. As such, he was clearly a citizen

---

1. Although we are not required to consider the sufficiency of the affidavit accompanying the application for arrest warrant, we feel compelled to comment on its inartful draftsmanship. The affidavit identifies the witnesses neither by names nor by descriptions which would enable the magistrate to determine whether they are criminal informants or citizen informants. Further, all of the critical factual assertions related to the eyewitness observations are made in passive voice, which obfuscates the magisterial process of determining the source(s) of the information alleged and evaluating that information with the appropriate legal standard.

informant. No further showing is necessary regarding the basis of his knowledge and his veracity. *See Melson,* 638 S.W.2d at 354–56.

▮▮▮ Teresse Patterson, however, was the defendant's accomplice, and he is more properly categorized as a criminal informant. A *Jacumin* analysis is necessary regarding the information he provided to Detective Postiglione. Patterson's basis of knowledge is his presence as an eyewitness and participant in the crime. His information is reliable because much of it was corroborated by independent evidence gathered by the police, which is detailed above. *See Stevens,* 989 S.W.2d at 295 (basis of knowledge and veracity of information supplied by informant's eyewitness of drug manufacturing and law enforcement's testing of drugs to confirm composition); *State v. Simpson,* 968 S.W.2d 776, 782 (Tenn.1998) ("A showing that the informant's data is reliable may satisfy the credibility prong."); *State v. Michael Alonzo Neil,* No. 03C01–9210–CR–00368, slip op. at 5, 1993 WL 101937 (Tenn.Crim.App., Knoxville, Apr. 7, 1993) (veracity and basis of knowledge demonstrated by informant's past reliable information, eyewitness of drugs in question, and accuracy of information given), *perm. app. denied* (Tenn.1993); *State v. Moon,* 841 S.W.2d 336, 339 (Tenn.Crim.App.1992) (basis of knowledge supported by informant having seen drugs at residence).

This evidence, which the record establishes was known to Detective Postiglione at the time of the defendant's arrest, supports a finding of probable cause. In so holding, we are unpersuaded by the defendant's arguments that his fingerprints could have been placed upon the car at any time, that the shell casing which was found in a common area of his apartment building could have been dropped by any-

one, and that the shell casing found near his residence had no fingerprints on it. While the defendant's arguments might be significant if these items of evidence were viewed in isolation, when all of the evidence described in the affidavit is considered in the aggregate, it amounts to probable cause to believe the defendant unlawfully killed the victim, thereby providing an adequate basis for arrest.

The trial court properly denied the motion to suppress.

## IV

Finally, the defendant claims the trial court erred in failing to instruct the jury on attempted theft as a lesser-included offense of attempted robbery.[2] In Tennessee, a trial court is required by statute "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn.Code Ann. § 40–18–110 (1997); *see State v. Burns,* 6 S.W.3d 453, 464 (Tenn.1999).

"Robbery is the intentional or knowing *theft of property* from the person of another by violence or putting the person in fear." Tenn.Code Ann. § 39–13–401 (1997) (emphasis added). Theft of property is knowingly obtaining or exercising control over the property of another with the intent to deprive the owner of the property and without the owner's effective consent. Tenn.Code Ann. § 39–14–103 (1997).

▮▮▮ In pertinent part, an offense is lesser-included within a greater offense if "all of its elements are included within the statutory elements of the offense charged." *Burns,* 6 S.W.3d at 466. Upon review of the statutory definitions of robbery and theft of property, it is apparent that the

---

2. As discussed in section I.A. above, the jury was instructed on, and the defendant convicted of, the crime of attempted robbery as opposed to attempted aggravated robbery. In his brief, the defendant actually claims the trial court should have instructed the jury on attempted theft as a lesser-included offense of attempted *aggravated* robbery; however, the issue we consider is whether the instruction was proper as a lesser-included offense of attempted robbery.

elements of theft of property are included within the statutory elements of the offense of robbery via the robbery statute's element of theft of property. It follows that attempted theft is a lesser-included offense of attempted robbery.

 Thus, the question which remains is whether the evidence of record justified an instruction on attempted theft. *See Burns*, 6 S.W.3d at 467. In this regard, the supreme court has recently said, "The mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense. Whether or not a particular lesser-included offense should be charged to the jury depends on whether proof in the record would support the lesser charge." *Id.* at 468. In determining whether the offense should be charged, the trial court must engage in a two-part inquiry. First, it "must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." *Id.* at 469. Such determination is made by examining the evidence in the light most favorable to the existence of the lesser-included offense. *Id.* Then, "the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." *Id.*

In the present case, the difference between the conviction offense of attempted robbery, on one hand, and attempted theft, on the other, turns on whether the defendant attempted to take property "from the person of another by violence or putting the person in fear." *Compare* Tenn.Code Ann. § 39–13–401 (1997) (robbery) *with* Tenn.Code Ann. § 39–14–103 (1997) (theft). At trial, the defense was that

neither an attempted robbery nor an attempted theft occurred; rather, the defendant approached and spoke to the victim because he believed the victim was the same person with whom he had been involved in an earlier altercation.[3] Significantly, the defendant did not dispute that he employed a gun in the encounter with the victim.

 The question then becomes whether, in determining if there is evidence that reasonable minds could accept as to the lesser-included offense, the trial court must find that there is proof of the lesser-included offense solely because it is a portion of the evidence supporting the existence of the greater offense, as opposed to the evidence of the lesser offense being an alternative explanation for what occurred.[4] Upon review of relevant authorities, we hold that the trial court is not obliged to give the lesser-included offense instruction where there is no evidence of the lesser offense *other than* the very same evidence which supports the greater offense, that is, "that reasonable minds could accept as to the lesser-included offense." *Burns*, 6 S.W.3d at 469.

This conclusion is supported by various authorities cited in the supreme court's recent *Burns* opinion. In *State v. Trusty*, 919 S.W.2d 305, 310 (Tenn.1996), *overruled on other grounds, State v. Dominy*, 6 S.W.3d 472 (Tenn.1999), the court observed that the elements of a lesser included offense are generally a subset of the greater, and one cannot commit the greater without also committing the lesser. However, the court also said that an accused is entitled to an instruction on such offenses only "if the evidence would sup-

---

**3.** As noted above, the defendant presented no evidence. Our statement of the theory of the defense has been gleaned from the defendant's cross-examination of witnesses, opening statement and closing statement.

**4.** An illustration may be of use in divining the distinction. In this case, the evidence of attempted robbery is simply the evidence of attempted theft, plus the evidence of the tak-

ing of property from the victim by violence or placing the victim in fear. If the defendant claimed he did not have a gun or speak any threatening words to the victim, the jury would have been presented with a situation of conflicting evidence in which attempted theft would be an alternative explanation to the state's primary theory of attempted robbery.

port a conviction for the offense." *Id.* at 311. Implicitly, the court envisioned that one might commit a lesser offense in the process of committing a greater offense, yet the evidence would not support a conviction of the lesser offense.

For example, in *State v. Langford*, 994 S.W.2d 126, 128 (Tenn.1999), the defendant claimed that the trial court should have instructed on criminal trespass as a lesser-included offense of aggravated burglary. The evidence demonstrated that the defendant entered the home of another with the intent to commit a felony, and he proceeded to accomplish the felony once inside. *Id.* at 129. The court noted that the only difference between the crime of aggravated burglary and the lesser-included offense of criminal trespass was that the former required the additional element of intent to commit a felony. *Id.* There was no dispute that the defendant unlawfully entered the home of another with the intent to commit and actually committed the felony of aggravated assault; the defendant merely claimed that the discharge of the firearm in his possession was accidental. *Id.* at 127, 129. The court relied on numerous authorities for the proposition, "Failure to instruct is not error where the record clearly shows that the defendant was guilty of the greater offense and the record is devoid of any evidence permitting an inference of guilt of the lesser offense." *Id.* at 128. Thus, "the evidence supported the greater offense, and the record was devoid of evidence supporting the lesser charge of criminal trespass." *Id.* at 129. As such, there was no error in the failure to instruct on the lesser-included offense of criminal trespass.

In contrast, in *Johnson v. State*, 531 S.W.2d 558, 559 (Tenn.1975), there was conflicting evidence before the jury regarding whether the defendant possessed a weapon during the perpetration of his crime. He was charged with robbery with a deadly weapon, and the trial court submitted no instructions on the lesser-included offenses of larceny from the person and petit larceny. *Id.* at 558. In view of the factual dispute, the supreme court found error in failing to charge on the lesser-included offense of larceny from the person. *Id.* at 559.

*Trusty, Langford,* and *Johnson* are three of the cases relied upon by the supreme court in its *Burns* formulation of a two-step analysis for determining when a lesser-included offense instruction should be given. *See Burns,* 6 S.W.3d at 469. The other three cases cited in this portion of the *Burns* opinion are not inconsistent. *See id.* (relying on *State v. Bolden,* 979 S.W.2d 587 (Tenn.1998); *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224 (1962); *Templeton v. State,* 146 Tenn. 272, 240 S.W. 789 (1922)).

█ Returning with this logic to the case at bar, there was no evidence that reasonable minds could accept as to the existence of the lesser-included offense, as opposed to the greater. Having so determined, we are not required to consider the second part of the *Burns* inquiry, whether "the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." *Burns,* 6 S.W.3d at 469. Thus, we conclude that the trial court properly refrained from instructing the jury on the lesser-included offense of attempted theft.

Finding no error requiring reversal, we affirm the judgment of the trial court. The matter is remanded for correction of the judgment in Count Two as specified in section I.A. of this opinion.

RILEY and WOODALL, JJ., concur.