# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 15, 2005 Session

## STATE OF TENNESSEE v. JOSEPH WILSON

### Direct Appeal from the Circuit Court for Robertson County
### No. 02-0331    Michael R. Jones, Judge

---

### No. M2003-02151-CCA-R3-CD - Filed June 16, 2005

---

Defendant was indicted for evading arrest, a Class E felony, in count one; for carjacking, a Class B felony, in count two; for reckless endangerment of Officer Billy Moyer, a Class E felony, in count three; for reckless endangerment of Officer Joe MacLeod, a Class E felony, in count four; for driving on a canceled, suspended or revoked license, subsequent offense, a Class A misdemeanor, in count five; and resisting arrest, a Class B misdemeanor, in count six. Following a jury trial, Defendant was found guilty of Class E felony evading arrest, carjacking, reckless endangerment of Officer Moyer, and driving on a revoked license in counts one, two, three and five. Defendant was found not guilty of reckless endangerment of Officer MacLeod and resisting arrest in counts four and six. The trial court sentenced Defendant as a Range II, multiple offender, to two years for the felony evading arrest conviction, twelve years for the carjacking conviction, two years for the reckless endangerment conviction, and eleven months, twenty-nine days for the driving on a revoked license conviction. The trial court ordered Defendant to serve his sentences concurrently for an effective sentence of twelve years. On appeal, Defendant argues that the evidence was insufficient to support his convictions for carjacking and reckless endangerment, and that the trial court erred in not instructing the jury on robbery and theft of property as lesser included offenses of carjacking. Following a thorough review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); and Ana Escobar, Nashville, Tennessee (at trial), for the appellant, Joseph Wilson.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At the time of the offenses, Officer Billy Moyer with the Springfield Police Department knew that a warrant for Defendant's arrest was outstanding. He had information that Defendant was staying in a trailer park on Childress Street. Around midnight on July 1, 2002, Officer Moyer spotted a vehicle matching the description of Defendant's car parked in front of one of the trailers in the trailer park. A man was sitting on the hood of the car. Officer Moyer approached the man on foot. There were approximately twenty-five to thirty people outside that evening, and one of the bystanders yelled, "Police." The man jumped into his red car and drove off before Officer Moyer could positively identify him as Defendant. Officer Moyer radioed for assistance and drove in the opposite direction of the red car. He intercepted the car on Central Avenue, identified Defendant as the driver, and activated his emergency equipment. Officer Joe MacLeod caught up with Officer Moyer's and Defendant's vehicles at this point.

At trial, Officers Moyer and MacLeod described the ensuing chase as follows. After Officer Moyer turned on his blue lights, Defendant turned onto Childress Street at a high rate of speed, ran a stop sign, and drove back to the trailer park. Defendant drove over a curb and into a crowd of people who had gathered in response to the police sirens. Defendant drove in between two trailers, jumped out of the moving vehicle, and fled on foot. Officer Moyer left his patrol car and pursued Defendant on foot. He eventually drew close enough to Defendant to tackle him, but Defendant eluded his grip.

Officer MacLeod, accompanied by a police dog on a leash, caught up with Officer Moyer and Defendant. Officer MacLeod told Defendant three times to get on the ground because he was under arrest. Defendant turned to run, and Officer MacLeod released the dog's leash. The dog bit Defendant on the arm, and Defendant fell down. About seventy-five people had gathered by this time. Someone in the crowd ran over and hit the dog with a trash can. The dog released Defendant's arm, and Defendant ran back into the trailer park toward the parking spaces in front of lots four and five.

Two cars were parked in front of the trailers, one of which was a black Pontiac Grand Am. Redrickous [sic] Burr was sitting in the car listening to music. Officer Moyer said that Defendant entered the Pontiac from the passenger side, while Officer MacLeod said that Defendant entered through the driver's side. Officer MacLeod said that Mr. Burr's eyes "were wide open," and he was "frantic" and "scared." Mr. Burr said, "get him out of my car, Joe Mack."

Defendant squeezed into the driver's seat underneath Mr. Burr and pushed Mr. Burr toward the driver's side door which was open. Officer MacLeod approached the Pontiac and unleashed the police dog again. The police dog bit Defendant on the arm. Officer Moyer was standing by the Pontiac's front bumper. Defendant started the Pontiac and began to drive off with both the driver's side door and the passenger door open. The Pontiac pinned Officer Moyer against the car parked

in the next space, and the passenger door brushed against him as Defendant pulled out of the parking space. The police dog was still holding on to Defendant's arm when the car began to move. Officer Moyer drew his gun but did not shoot because Mr. Burr was on top of Defendant. Mr. Burr crawled out of the car from the passenger side. Officer Moyer yelled a command to the dog to release its hold, and the dog fell away from the Pontiac.

Officers Moyer and MacLeod returned to their patrol cars and pursued Defendant down Richard Street and then Elmwood Street where Defendant wrecked the Pontiac. Defendant fled once again on foot, and Officer MacLeod unleashed the police dog. The police dog latched onto Defendant's arm and brought him to the ground. The officers were able to handcuff Defendant at this point.

On cross-examination, Officer Moyer said that he did not see a weapon on Defendant during the chase. He agreed that the Pontiac's open car door did not hit him hard enough to cause the door to close. Officer Moyer said that he did not seek medical treatment after the chase was over. Officer Moyer conceded that he did not actually see Defendant start the Pontiac but assumed he did so because Mr. Burr was holding up both of his arms when the car started.

Mr. Burr testified that he was sitting in his mother's Pontiac listening to music when Defendant came up to his car. Mr. Burr said that he had heard of Defendant but did not personally know him. The key was in the ignition because Mr. Burr had turned on the car's electrical system so that he could operate the CD player. Mr. Burr said Defendant got into the Pontiac through the driver's side, and Mr. Burr got out of the car on the passenger side. Mr. Burr said that Defendant started the car.

On cross-examination, Mr. Burr said that he was not pushed out of the car but rather exited "on his own free will." Mr. Burr said that he did not see the police dog bite Defendant. He said that he was not scared of the police dog and just hoped that the dog did not bite him during the incident. Mr. Burr denied that he was scared of Defendant, denied that he said anything to Officer MacLeod, and denied that there was another car parked next to the Pontiac.

On redirect, Mr. Burr denied that he told the prosecutor before trial that someone had put "pressure" on him about his testimony, and he denied that he talked about the case with anyone. Mr. Burr said that he did not know Officer MacLeod.

The defense offered two witnesses who had been part of the crowd at the crime scene. Brandon Northington said that he was standing on the corner of Childress Street and Central Street when Defendant stopped his red car and began running. Mr. Northington said the police dog was very aggressive, and he saw Defendant fight with the dog. Mr. Northington said that Defendant did not pull Mr. Burr out of the Pontiac. He said that Defendant walked up to the Pontiac's driver's side, and Mr. Burr got out of the car from the passenger side. Mr. Northington said that the officers were not standing close to the Pontiac when Defendant drove away.

On cross-examination, Mr. Northington estimated that he was standing about sixty feet away from the Pontiac. He admitted that he knew Mr. Burr, but denied, on redirect examination, that he and Mr. Burr had discussed Mr. Northington's testimony prior to trial

Clark Moffett said he was standing across the street when Defendant drove off in the Pontiac. He said that Defendant was running to get away from the police dog. Mr. Moffett said that he did not see the Pontiac's car door strike Officer Moyer, and he did not see the car drag the police dog.

## II. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence supporting his convictions for carjacking and reckless endangerment. When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

### A. Carjacking Conviction

Defendant was convicted of the offense of carjacking which is defined as "the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) [a] deadly weapon; or (2) [f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a). Defendant does not dispute that he intentionally took Mr. Burr's car from his possession, and neither party contends that Defendant was armed during the incident. Defendant argues, however, that the evidence does not support a finding that he used force or intimidation to take Mr. Burr's car. Defendant argues that Mr. Burr testified that he got out of his car "on [his] own free will," and that he was not scared of Defendant. Mr. Burr said that he was just trying to get out of the way. The State, on the other hand, argues that Officer Moyer testified that Mr. Burr appeared to be "excited" and "upset." Officer MacLeod described Mr. Burr as "frantic" and "scared." Both officers said that Defendant slid under Mr. Burr until Mr. Burr was "sitting" in Defendant's lap, and that Mr. Burr was pushed up against the driver's side door as the police dog lunged at Defendant through the open door. Officer Moyer said that Mr. Burr managed to get out of the car by crawling out of the passenger side door.

-4-

The determination of whether Defendant used force or intimidation to steal Mr. Burr's car rested with the jury's assessment of the credibility of the witnesses. Based on its verdict of guilty, the jury obviously accredited the testimony of Officers Moyer and MacLeod that Defendant forced his way into Mr. Burr's car, that Mr. Burr was in the front seat of the car while the police dog attacked Defendant, and that Mr. Burr escaped from the car by crawling out of the passenger side door. We conclude that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Defendant committed the offense of carjacking by force and intimidation. Defendant is not entitled to relief on this issue.

### B. Reckless Endangerment

Defendant argues that the evidence was insufficient to support his conviction of reckless endangerment because there was no proof that he knew that Officer Moyer was anywhere near the Pontiac when Defendant drove the car away. In other words, Defendant contends that there was no evidence that he consciously disregarded a substantial risk of injury to others by his driving.

"A person commits an offense who recklessly engages in conduct which places or may place another person in imminent danger of death or bodily injury." Tenn. Code Ann. § 39-13-103(a). "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id.* § 39-11-106(31).

We find that the proof, taken in a light most favorable to the State, supports a finding that Defendant was aware of the risk created by his driving and consciously disregarded it. As the State argues, the chase had been going on for some time when Defendant appropriated Mr. Burr's vehicle. Officer Moyer had pursued Defendant in his patrol car, and then on foot after Defendant abandoned the red car. The police dog had attacked Defendant once and was again holding on to Defendant's arm with his teeth. Officer Moyer testified that Officer MacLeod was standing by the open driver's side door with the police dog. Officer Moyer was standing by the Pontiac's front fender next to a another car parked next to the Pontiac. When Defendant began to drive off, Officer Moyer was pinned between the Pontiac and the parked car. Officer Moyer said he was afraid his legs were going to be crushed. The Pontiac's open car door brushed against Officer Moyer as Defendant drove out of the parking space. Based on our review of the record, we find the evidence sufficient to support Defendant's conviction of reckless endangerment.

## III. Lesser Included Offenses

At the conclusion of the proof, the trial court instructed the jury on the offense of unauthorized use of an automobile as the only lesser included offense of the charged offense of carjacking. Relying on *State v. Kerry L. Dowell*, No. M2002-00630-CCA-R3-CD, 2003 WL

21486978 (Tenn. Crim. App., at Nashville, June 27, 2003) *perm. to appeal denied* (Tenn. Nov. 24, 2003), Defendant argues that the trial court erred in failing to instruct the jury on the offenses of robbery and theft of property as lesser included offenses of carjacking.

In *Dowell*, a panel of this Court held without analysis that "both robbery and theft of property are lesser included offenses under both (a) and (b) of the *Burns* analysis." *Dowell*, 2003 WL 21486978, at *15. In *Burns*, our Supreme Court concluded that an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>> (2) a less serious harm or risk of harm to the same person, property or public interest. . . .

*State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999). By definition, then, a specifically defined lesser offense cannot be a lesser offense of a specifically defined greater offense under *both* part (a) and (b) of the *Burns* analysis. We observe, however, that offenses containing alternative elements, such as aggravated assault, for example, may have one form of assault qualify as a lesser included offense under part (a), and another form of assault qualify under part (b). Even under this scenario, however, the lesser included offense must fall into either the "(a)" category, or the "(b)" category, but not both.

In count two of the indictment, Defendant was charged with carjacking, which is unlawfully taking a motor vehicle from the possession of another, to wit: Mr. Burr, by force or intimidation. Tenn. Code Ann. § 39-13-404. Robbery is defined as (1) the intentional or knowing, (2) theft of property, (3) from the person of another, (4) by violence or putting the person in fear. *Id*. § 39-13-401(a). Theft is defined as (1) knowingly obtaining or exercising control over property, (2) without the owner's effective consent, and (3) with the intent to deprive the owner of the property. *Id*. § 39-14-103.

Theft is clearly a lesser included offense of robbery under part (a) of the *Burns* analysis. *See State v. Bowles*, 52 S.W.3d 69, 79-80 (Tenn. 2001); *State v. Lewis*, 36 S.W.3d 88, 99-100 (Tenn. Crim. App. 2000). That is, all of the statutory elements of theft are included within the statutory elements of robbery. *See Burns*, 6 S.W.3d at 466. It is the use of violence or putting the person in fear that elevates a theft to a robbery. *Bowles*, 52 S.W.3d at 80. One cannot, then, commit the offense of robbery without also committing the offense of theft. *See State v. Allen*, 69 S.W.3d 181, 188 (Tenn. 2002) (citing *Bowles*, 52 S.W.3d at 80).

An "owner" is "a person, other than the defendant, who has possession of . . . property . . . and without whose consent the defendant has no authority to exert control over the property." Tenn. Code Ann. § 39-11-106(26). Thus, the statutory element of taking "from the person of another" is included within both a carjacking offense and a robbery offense.

On the other hand, to "deprive," as used in the definition of a theft offense, means to "(A) withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner; (B) withhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or (C) dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely." *Id.* § 39-11-106(8). A carjacking offense does not require proof that the defendant took the vehicle with the intent to "deprive the owner of the property;" it only requires proof that the defendant took property "from the possession of another." *Compare* Tenn. Code Ann. § 39-14-103 *with* § 39-13-404(a). The offense of theft, therefore, has a statutory element not included within the statutory elements of the offense of carjacking. Thus, theft cannot be a *Burns* (a) lesser included offense of carjacking. Because robbery includes all of the elements of theft within its statutory elements, the offense of robbery is also not a lesser included offense of carjacking under part (a) of the *Burns* analysis.

In order to be considered a *Burns* part (b) lesser included offense, the additional statutory element must either "establish a different mental state indicating a lesser kind of culpability" or "establish a less serious harm or risk of harm to the person, property or public interest." *Burns*, 6 S.W.3d at 467. The statutorily defined element, "with intent to deprive the owner of property," does *not* reflect a lesser kind of culpability than "taking a vehicle from the possession of another," regardless of whether or not the two statutory elements represent "different mental state[s]." Nor can we conclude that the statutory element, "with the intent to deprive the owner of property," establishes "a less serious harm or risk of harm" to the same property (in this case a motor vehicle) than simply taking possession of the vehicle from another. The offenses of robbery and theft are thus not lesser included offenses of carjacking under part (b) of the *Burns* analysis.

Therefore, while it is abundantly clear that theft of a vehicle is a much less serious crime than carjacking, this does not make it a lesser included offense of carjacking under the *Burns* analysis. Since theft is an integral element of robbery, and robbery has been defined as an elevated form of theft, then robbery is also not a lesser included offense of carjacking as defined in *Burns. See Bowles*, 52 S.W.3d at 80.

Accordingly, we find that the trial court did not err in not charging theft and robbery as lesser included offenses of carjacking. As a result, we need not address the State's argument that Defendant has waived this issue on appeal under Tennessee Code Annotated section 40-18-110(c). Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE