# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville May 15, 2012

## TERRY LEWIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 96-D-2173      Seth Norman, Judge**

**No. M2011-02464-CCA-R3-CO - Filed July 10, 2012**

The pro se petitioner, Terry Lewis, appeals the Davidson County Criminal Court's summary dismissal of his petition for writ of error coram nobis attacking his convictions for first degree murder and attempted robbery.  Petitioner claims that a report indicating that authorities performed a fingerprint analysis on a shell casing found near petitioner's apartment is new evidence.  Following our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Terry Lewis, Tiptonville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

This court's opinion on direct appeal summarized the facts underlying petitioner's convictions as follows:

> In the light most favorable to the [S]tate, on the afternoon of July 10, 1996, [petitioner] and Teresse Patterson were riding around Nashville in an

older model blue Cadillac with bullet holes on the driver's side. Patterson was driving, and [petitioner] was in the front passenger seat. The two were drinking liquor. There was a Glock semi-automatic weapon in the car [that] belonged to the individual from whom Patterson had borrowed the Cadillac. [Petitioner] began talking about "getting paid," which is slang for committing a robbery or selling drugs; however, Patterson was recently paroled and not anxious to engage in any criminal activity.

[Petitioner] wanted to go through the Haynes Park area, and Patterson drove to that location. While they were in this area, they encountered the victim, Eugene Blakemore, who was walking on Haynes Park Drive. The victim was wearing a large, gold, herringbone necklace, and [petitioner] said he wanted to rob the victim. Patterson implored [petitioner] not to shoot the victim, and [petitioner] said, "I'm not going to shoot him." Patterson turned around in a driveway so that the victim would be on [petitioner]'s side of the Cadillac. Patterson drove slowly to the victim, and [petitioner] said, "You know what this is, give me what you got. If you run I'm going to shoot you." [Petitioner] had the Glock pistol in his hand, and when the victim saw it, he ran. [Petitioner] then fired a single shot at the victim, fatally striking him in the back of the head. The victim fell, and Patterson and [petitioner] left the scene in the Cadillac.

Winston Davidson, whose wife was a cousin of the victim, witnessed the encounter between Patterson, [petitioner,] and the victim. Davidson was standing inside his home on Haynes Park Drive looking out the front door. The crime occurred in front of Mr. Davidson's house, and when the victim was shot, he fell in Mr. Davidson's yard.

Through investigative work, the police recovered the Cadillac the following day. The vehicle was processed for fingerprints, and prints matching those of [petitioner] were found on the rain guard above the passenger side window.

A 45-caliber shell casing was recovered from the scene of the crime. During the subsequent investigation, police officers went to [petitioner]'s apartment approximately five days after the crime. As the officers were coming down the stairs outside [petitioner]'s apartment, they found another 45-caliber shell casing. [Petitioner] had arrived at his apartment after the officers, and one of the officers testified that he believed [petitioner] had approached the apartment from the direction in which the shell casing was

found. The two shell casings were compared by a forensic scientist employed by the Tennessee Bureau of Investigation, who opined that both shells were of the same manufacture and caliber, and both had been fired from the same weapon. The forensic scientist further opined that the weapon was most likely of Glock manufacture.

Both Patterson and [petitioner] were interviewed by the authorities, and both initially denied any involvement in the crime. [Petitioner] acknowledged he had at some point been inside the Cadillac with Patterson, but he claimed this was not on the day of the crime. Eventually, Patterson admitted his culpability, and he gave the authorities information about [petitioner]'s involvement. Patterson testified for the [S]tate at trial, and he admitted that he hoped to gain a favorable sentencing recommendation from the [S]tate for his testimony.

[Petitioner] finally admitted that he shot the victim. However, he told the authorities that he had approached the victim to inquire whether he was the same individual with whom he had been in a recent altercation in a nightclub. [Petitioner] said that he thought the victim was reaching for a weapon, and [petitioner] himself was holding the Glock that was in the car. [Petitioner] claimed that as he was taking out the Glock or putting it up, it accidentally discharged, striking the victim. [Petitioner] claimed at one point that the weapon discharged when it struck the car window, but he also said he had his arm straight out.

The defense presented no evidence at trial. However, through cross-examination of the [S]tate's witnesses, the defense pursued a theory of accidental shooting during the course of an encounter between [petitioner] and someone with whom he had been in a previous confrontation. The defense strongly challenged the [S]tate's evidence that the killing had been intentional and that [petitioner] was in the process of perpetrating a robbery when he killed the victim.

Upon consideration of the evidence, the jury found [petitioner] guilty of premeditated murder, felony murder in the attempt to perpetrate a robbery, and attempted robbery. The trial court merged the murder convictions and imposed a life sentence. Following a sentencing hearing, the trial court imposed a two-year sentence for attempted robbery, to be served concurrently to the life sentence.

*State v. Lewis*, 36 S.W.3d 88, 92-93 (Tenn. Crim. App. 2000). On appeal, this court affirmed the judgments of the trial court; however, we remanded the case for a correction of the judgment form for the attempted robbery conviction. *Id.* at 91. Petitioner filed a petition for post-conviction relief, which was denied. This court affirmed the post-conviction court's judgment. *Terry T. Lewis v. State,* No. M2005-01673-CC-R3-PC, 2006 WL 1063314, at *1 (Tenn. Crim. App. Apr. 20, 2006). Petitioner also filed a petition for writ of habeas corpus, which the habeas corpus court dismissed. This court affirmed the dismissal in a memorandum opinion. *Terry Lewis v. State*, No. M2007-01616-CCA-R3-HC, 2007 WL 4116489, at *1 (Tenn. Crim. App. Nov. 14, 2007).

Petitioner filed the instant petition for writ of error coram nobis on July 25, 2011, claiming that a police report indicating that authorities performed a fingerprint analysis on a shell casing found near petitioner's apartment was not disclosed in discovery or at trial. According to petitioner, "the State's suppression of [Sergeant] Foster as an expert witness (finger print examiner), his magnetic powder test, and the latent partial print found deprived [petitioner] of the right to confront and cross[-]examine not only [Sergeant] Foster but his testing and results." The trial court summarily dismissed the petition for writ of error coram nobis without an evidentiary hearing. Petitioner appealed the trial court's summary dismissal.

## II. Analysis

On appeal, petitioner alleges that the newly discovered fingerprint evidence established the reasonable probability of a different judgment and that he was without fault in failing to present the evidence at trial. He asserts that the court's summary dismissal was improper because the affidavit in support of the petition for writ of error coram nobis was sufficient to justify an evidentiary hearing. The State responds that the trial court did not abuse its discretion in dismissing the petition.

The decision to grant or to deny a petition for writ of error coram nobis on its merits is left to the sound discretion of the trial court. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). To obtain coram nobis relief, petitioner must show that the newly discovered evidence could not have been obtained before trial by either the

petitioner or his counsel exercising reasonable diligence. *Vasques*, 221 S.W.3d at 527-28. Our legislature has limited the relief available through the writ:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (Supp. 2011).

Coram nobis claims are fact-intensive, not easily resolved on the face of the petition, and often require a hearing. *Harris v. State*, 102 S.W.3d 587, 593 (Tenn. 2003). However, "[s]imilar to habeas corpus hearings, coram nobis evidentiary hearings are not mandated by statute in *every* case . . . ." *Richard Hale Austin v. State*, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, at *5 (Tenn. Crim. App. Dec. 13, 2006) (emphasis added). "[R]emanding a case which failed facially to meet statutory requirements for an evidentiary hearing would be an exercise in futility, and the interests of judicial economy and efficiency are better served by disposing of the case prior to a hearing." *Id.* (citations omitted).

Petitioner asserts that the trial court erred by summarily dismissing his petition without a hearing. The trial court summarily dismissed the petition, finding that "the newly discovered information submitted by [petitioner] would have provided insignificant assistance in defense of the charges had it been presented at trial." The court considered the copious evidence against petitioner at trial, including petitioner's properly admitted confession, the eyewitness's testimony, and a shell casing recovered from the scene that matched the weapon used in the crime. That weapon belonged to the owner of the vehicle in which petitioner was a passenger when the crimes were committed. The trial court determined that in light of the overwhelming evidence against petitioner, evidence of a partial fingerprint on a shell casing found near petitioner's home "would not have provided ample support to render a different outcome at trial."

The petitioner admitted to shooting the victim. He presented a defense at trial that the shooting was accidental. Existence of a partial print on a shell casing found near petitioner's residence would not have impacted the outcome of the trial in any way. A hearing on this petition would have been a waste of judicial resources. Accordingly, we conclude that the

trial court did not abuse its discretion in summarily dismissing the petition for writ of error coram nobis.

## III. Conclusion

Based on the foregoing, we affirm the judgment of the coram nobis court.

_____
ROGER A. PAGE, JUDGE