IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 12, 2006

## STATE OF TENNESSEE v. JACQUES SHERRON

### Appeal from the Circuit Court for Crockett County
### No. 3580    Clayburn Peeples, Judge

_____

### No. W2005-00903-CCA-R3-CD  - Filed October 17, 2006

_____

The appellant, Jacques Sherron, was convicted by a jury of criminal responsibility for introducing a controlled substance into a penal institution, conspiracy to introduce a controlled substance into a penal facility, possession of cocaine with the intent to sell or deliver and possession of marijuana with the intent to sell or deliver. The appellant received an effective sentence of ten years on March 18, 2005. The appellant filed a pro se notice of appeal on April 6, 2005. On July 1, 2005, trial counsel for the appellant filed a motion for new trial alleging that the evidence was insufficient, that the verdict was based on circumstantial evidence and that the appellant's sentence was excessive. The appellant subsequently filed a motion in this Court requesting dismissal of his appeal without prejudice due to the fact that the trial court had not yet ruled on the motion for new trial. This Court denied the motion. The appellant filed an amended pro se motion for new trial. The trial court held a hearing on the motion for new trial on September 14, 2005, at which time the appellant filed a third amended motion for new trial. The trial court denied relief, and the appellant filed a second notice of appeal on September 14, 2005. On appeal, the following issues are presented for our review: (1) whether the conspiracy charge should have been dismissed for failure to state a crime; (2) whether the evidence was sufficient to support the verdict; and (3) whether the trial court committed plain error in failing to give an accomplice instruction to the jury. For the following reasons, we reverse and dismiss the conspiracy conviction, and affirm the conviction for introducing a controlled substance into a penal facility.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed in Part; Reversed and Dismissed in Part.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLILAMS, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Jacques Sherron.

Paul G. Summers, Attorney General and Reporter; Sophia A. Lee, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 8, 2003, the appellant was indicted by the Crockett County Grand Jury for one count of criminal responsibility for introducing a controlled substance into a penal institution, one count of conspiracy to introduce a controlled substance into a penal institution, one count of possession of cocaine with the intent to sell or deliver and one count of possession of marijuana with the intent to sell or deliver.

At trial, Jeffrey Allen testified that he was an inmate at the Crockett County Jail when he made arrangements with several people including Chester Allen, Jacques McLemore and the appellant to have marijuana and cocaine delivered to him in jail. Mr. Allen testified that he spoke directly with the appellant regarding the plan, but that he did not know exactly what role the appellant played in the delivery of the drugs. Mr. Allen testified that he hid some money in the jail for the drugs and informed an outside party where the money would be found.

After talking with Mr. Allen, the appellant delivered a brown paper bag containing two blue boxes to Mr. Allen's mother, Martha Allen, on September 7, 2003. The appellant informed Mrs. Allen that the package contained cigarettes. Mrs. Allen examined one of the boxes and noticed that it was strange looking, but did not open the box and put it back in the bag. Mrs. Allen testified that she did not smoke, but that she had never seen cigarettes in that type of packaging.

Mr. Allen then called his mother from the jail and asked her to deliver the package of "cigarettes" to the jail. Mrs. Allen gave the bag to her son-in-law, Ernest Brodnax, and instructed him to deliver it to the jail. Mrs. Allen testified that she was unaware that there were any controlled substances in the package she received from the appellant.

Ernest Brodnax testified that he agreed to deliver the package to Mr. Allen at the jail. He also purchased three additional packs of cigarettes for the appellant with money from Mrs. Allen. Mr. Brodnax did not look into the bag until he was prepared to deliver it and had no knowledge that the blue boxes contained any illegal material. Mr. Brodnax turned the package over to the jailers, Officers Blake Perry and Tina Howell. Officer Howell examined the package and became suspicious because it was "bulging and hard" and she "assumed that there was something inside it other than tobacco." The jailers quickly alerted Lieutenant Richard Stitts, a deputy with the Crockett County Sheriff's Department. Once Lieutenant Stitts arrived, the three opened the packages and found what appeared to be cocaine and marijuana. Lieutenant Stitts turned the matter over to Chief Sills of the Sheriff's Department for further investigation.

Chief Sills testified that he called Mrs. Allen and asked her if Mr. Brodnax had delivered a package to the jail. Mrs. Allen cooperated fully, giving Chief Sills Mr. Brodnax's cell phone number. Chief Sills contacted Mr. Brodnax and returned to the jail immediately. That evening, Mrs.

Allen, Mr. Brodnax, and Mr. Brodnax's wife spoke with Chief Sills at the Sheriff's Department. Neither Mr. Brodnax nor Mrs. Allen were charged in connection with the delivery of the controlled substances to the jail. Based on the information received from Mrs. Allen and Mr. Brodnax, Chief Sills charged the appellant in connection with the incident. Mr. Allen ultimately pled guilty to conspiracy to introduce contraband into a penal institution.

Dana Rose of the Tennessee Bureau of Investigation testified that the two boxes delivered to the jail contained 23.3 grams of marijuana and .3 grams of cocaine. The boxes were not tested for fingerprints. The appellant did not take the stand in his own defense.

At the conclusion of the jury trial on December 8, 2004, the appellant was convicted on all counts.

At a sentencing hearing held on March 18, 2005, the trial court sentenced the appellant as a Range I standard offender to ten years for the conviction for criminal responsibility for introducing a controlled substance into a penal institution. The trial court merged the conspiracy conviction with the criminal responsibility conviction. The trial court also sentenced the appellant to ten years for the possession of cocaine with the intent to sell or deliver conviction and two years for the possession of marijuana with the intent to sell or deliver conviction. The trial court ordered the sentences to be served concurrently, for a total effective sentence of ten years.

On April 6, 2005, the appellant filed a pro se notice of appeal. On July 1, 2005, trial counsel for the appellant filed a motion for new trial challenging the sufficiency of the evidence at trial and the appellant's sentence. On July 27, 2005, the appellant filed a motion in this Court requesting dismissal of his appeal without prejudice due to the fact that the trial court had not yet ruled on the motion for new trial. This Court denied the motion, determining that the court would be remiss in dismissing the appeal based on bare allegations because the "record fails to contain a motion for new trial pleading," the record is "absent an order denying a motion for new trial" and the appellant has not shown with proper documentation that a motion for new trial was actually pending before the trial court. The appellant next filed an amended pro se motion for new trial in the trial court on August 10, 2005, in which he challenged the sufficiency of the evidence and sought dismissal of the indictments. The trial court held a hearing on the motion for new trial on September 14, 2005, at which time the appellant filed a third pro se amended motion for new trial in which he argued that the trial court failed to give an instruction on accomplice testimony, failed to give full and complete jury instructions, and failed to grant a new trial based on violations of Brady v. Maryland, 373 U.S. 83 (1963). During the hearing on the motion for new trial, trial counsel for the appellant explained that he was retained by friends and family members of the appellant to represent the appellant at trial only. Trial counsel explained that at some point the appellant attempted to "get another lawyer" in Jackson, but trial counsel later assumed that the appellant had not hired another attorney. Trial counsel then received correspondence from the appellant in which it appeared that the appellant intended to pursue the appeal pro se. Trial counsel stated that he filed a "perfunctory" motion for new trial. The trial court appointed the public defender's office to represent the petitioner on appeal. The trial court denied relief at the conclusion of the hearing and entered an order denying the motion

for new trial on October 19, 2005. The appellant filed a second notice of appeal on September 14, 2005.

Analysis

Initially, we must briefly address the procedural history of the case herein. The appellant's motion for new trial was filed on July 1, 2005, more than three months after the sentencing hearing. A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). It is apparent from the record on appeal that the appellant's motion for new trial was untimely.

> Tennessee Rule of Appellate Procedure 3(e) provides in pertinent part:
>
> An appeal as of right to the Supreme Court, Court of Appeals, or Court of Criminal Appeals shall be taken by timely filing a notice of appeal . . . . Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

"Unlike the untimely filing of the notice of appeal, this Court does not have the authority to waive the untimely filing of a motion for new trial." See Tenn. R. App. P. 4(a); State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). A panel of this Court has previously held that pursuant to Rule 3(e) "the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include an issue in a motion for a new trial results in waiver of all issues which, if found to be meritorious, would result in the granting of a new trial." State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) (footnote omitted). This waiver does not apply however, if the issue is found to be meritorious and would result in the dismissal of the prosecution against the accused. Id. at 416 n.5 (citing State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); State v. Moore, 713 S.W.2d 670, 673-74 (Tenn. Crim. App. 1985); State v. Durham, 614 S.W.2d 815, 816 n.1 (Tenn. Crim. App. 1981)). In addition, we also may consider errors affecting the substantial rights of the defendant if review is necessary to do substantial justice, i.e. "plain error." Tenn. R. Crim. P. 52(b); State v. Johnson, 980 S.W.2d 414, 418 (Tenn. Crim. App. 1998); State v. Maynard, 629 S.W2d 911, 913 (Tenn. Crim. App. 1981).

In the case herein, the trial court considered and ruled on the appellant's motion for new trial despite the fact that it was untimely. Because a trial court does not have jurisdiction to hear and determine the merits of an untimely motion for new trial, the trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . does not validate the motion." State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)). Consequently, we may only address issues which may result in the dismissal of

-4-

the prosecution of the appellant, namely the sufficiency of the evidence, or issues that evince plain error on the part of the trial court. See Dodson, 780 S.W.2d at 780; Tenn. R. Crim. P. 52(b). The appellant argues on appeal that the indictment should be dismissed for failure to state a crime, that the evidence is insufficient to support his conviction, and that the trial court committed plain error by failing to instruct the jury on accomplice testimony. Because all of these issues, if meritorious, would either result in a dismissal of the prosecution or could result in a finding of plain error on the part of the trial court, we will address the appellant's issues in spite of the untimeliness of the motion for new trial.

### Indictment

The appellant alleges that the indictment for conspiracy in Count Two failed to allege an overt act in furtherance of the agreement. Consequently, the appellant argues that the conviction was a "nullity" and should be dismissed. The State disagrees, contending initially that the appellant waived the issue for failure to raise it in a timely-filed motion for new trial. In the alternative, the State argues that he waived the issue for failure to raise it prior to trial, that any defect in the indictment does not rise to the level of plain error, and, in the alternative, that any possible defect in the indictment was cured when the appellant "pleaded to the indictment, went to trial on the merits and had the jury render its verdict."

Ordinarily, defenses and objections based on defective indictments must be raised prior to trial or they are waived. Tenn. R. Crim. P. 12(b)(2); State v. Wyatt, 24 S.W.3d 319, 322 (Tenn. 2000). It is undisputed that the appellant herein failed to object to the indictment prior to trial. However, the waiver rule does not apply when the indictment fails to allege an essential element of the offense, as the appellant argues herein. State v. Perkinson, 867 S.W.2d 1, 5-6 (Tenn. Crim. App. 1992). Thus, if the indictment fails to state an offense, the appellant has not waived the issue by failing to object to the indictment prior to trial.

As a general matter, "[t]he indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . ." Tenn. Code Ann. § 40-13-202. It is well-settled that an indictment must provide sufficient information: "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). In State v. Mencer, 798 S.W.2d 543 (Tenn. Crim. App. 1990), this Court held that the requirement that overt act is an essential element of the offense. The allegation and proof of an overt act was deemed an essential element of the offense of conspiracy.

> To allow a prosecutor or court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure, because

a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him.

United States v. Cecil, 608 F.2d 1294, 1297 (9th Cir.1979) (quoting United States v. Keith, 605 F.2d 462, 464 (9th Cir.1979)).

Therefore the appellant's failure to raise this issue prior to trial does not constitute a waiver. In State v. Perkinson, 867 S.W.2d 1 (Tenn. Crim. App. 1992), the indictment for conspiracy to commit first degree murder was found to insufficiently describe an overt act in furtherance of the conspiracy where the indictment alleged that the defendant and co-conspirator "did unlawfully, knowingly, and feloniously conspire with each other to commit first degree murder through the actions of another whom they agreed to feloniously move, incite, counsel, hire, command or procure to willfully, deliberately, maliciously, and with premeditation kill Gilbert Peeler." Id. at 5. The conspiracy count herein reads as follows:

> And the Grand Jurors aforesaid, upon their oath aforesaid, present further that [the appellant] on or about September 7, 2003, and in the aforesaid county, and within said jurisdiction, and before the finding of this indictment, did unlawfully and knowingly conspire and agree with Jeffrey Allen to commit the offense of introduction of contraband into a penal institution, to wit: by conspiring to introduce certain controlled substances, namely, Cocaine, a Schedule II controlled substance as classified in T.C.A. 39-17-408, and Marihuana, a Schedule VI controlled substance as classified in T.C.A. 39-17-415, into the Crockett County Jail, in violation of 39-12-103 and 39-16-201, all of which is against the peace and dignity of the State of Tennessee.

We conclude based on Perkinson that the count in the indictment for conspiracy is insufficient. This Court has reviewed the indictment and concludes that it does not allege an overt act. Consequently, the conviction for conspiracy is reversed and dismissed.

Sufficiency of the Evidence

Next, the appellant challenges the sufficiency of the evidence. Specifically, the appellant argues that the State failed to establish any agreement between the appellant and Mr. Allen and that there was no proof that the appellant "knowingly" possessed the contraband in the sealed boxes that were delivered to the jail. The State argues that the evidence was sufficient to sustain the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all

conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Moreover, a conviction may be based entirely on circumstantial evidence when the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). If the trier of fact can determine from the proof that all other reasonable theories except that of guilt are excluded, the evidence is sufficient.

The appellant herein was convicted of criminal responsibility for introducing a controlled substance into a penal institution, conspiracy to introduce a controlled substance into a penal facility, possession of cocaine with the intent to sell or deliver and possession of marijuana with the intent to sell or deliver. The appellant challenges all of his convictions.

A. Criminal Responsibility

Criminal responsibility for the acts of another is defined as, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). Under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. See id. To be criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with knowledge

-7-

that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

Looking to the evidence in the light most favorable to the State, the evidence at trial showed that the appellant "associated" himself with Mr. Allen by speaking with him on the phone about the delivery of drugs to the Crockett County Jail. Further, the evidence showed that the appellant ultimately delivered both cocaine and marijuana concealed in tobacco packages to Mr. Allen's mother for delivery to the jail. While the appellant did not himself deliver the drugs to the jail, the appellant associated himself with the venture by providing the drugs to Mrs. Allen for delivery into the jail. The evidence was sufficient to convict the appellant of criminal responsibility for introduction of contraband into a penal institution.

## B. Conspiracy

Criminal conspiracy is committed when two or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating the commission of an offense, agree that one or more of them will engage in conduct which constitutes the offense. See Tenn. Code Ann. § 39-12-103. To prove the existence of a conspiratorial relationship, the State may show that a "mutual implied understanding" existed between the parties. State v. Shropshire, 874 S.W.2d 634, 641 (Tenn. Crim. App. 1993). The conspiracy need not be proved by production of an official or formal agreement, in writing or otherwise. Id. The conspiracy may be demonstrated by circumstantial evidence and the conduct of the participants while undertaking illegal activity. Id. The very concept of a conspiracy connotes some harmonization of design, not equal participation in every individual component of every criminal offense. Id. Additionally, "[t]he commission of an overt act in furtherance of the conspiracy is an essential element of the offense." State v. Thornton, 10 S.W.3d 229, 234 (Tenn. 1999).

Looking at the proof introduced at trial, we conclude that the jury could have reasonably inferred the existence of an agreement between the appellant and Mr. Allen to introduce the cocaine and marijuana into the jail. The testimony presented at trial indicated that the appellant spoke with Mr. Allen on the telephone, then delivered the tobacco packages filled with cocaine and marijuana to Mr. Allen's mother for their delivery to the jail. See, e.g., State v. Yasmond Fenderson, No. 03C01-9711-CR-00496, 1999 WL 2840, at *4 (Tenn. Crim. App., at Knoxville, Jan. 6, 1999) (determining that although the State presented no direct proof of an agreement between conspirators, a jury may reasonably infer the existence of such an agreement from the conspirators' acts).

## C. Possession of Cocaine and Marijuana with Intent to Sell or Deliver

In the case herein, the appellant was convicted of two counts of violating Tennessee Code Annotated section 39-17-417(a)(4). Tennessee Code Annotated section 39-17-417(a)(4) makes it unlawful to "possess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Thus, in order to convict the appellant, the State was required to show: (1) a knowing mental state; (2) possession of cocaine and marijuana; (3) an intent to sell or deliver that cocaine and marijuana; and (4) that the weight of the cocaine was .5 grams or less and the weight of the marijuana was not less than 14.175 grams nor more than ten pounds. Tenn. Code Ann. 39-17-417. The State unquestionably proved beyond a reasonable doubt that the substances found in the packages delivered to the jail were cocaine and marijuana and that the weight of the cocaine was .3 grams and the weight of the marijuana was 23.3 grams of marijuana. Thus, the question is whether the appellant knowingly possessed the cocaine and marijuana with the intent to sell or deliver it.

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). A conviction for possession of cocaine and/or marijuana may be based upon either actual or constructive possession. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Before a person can be found to constructively possess a drug, it must appear that the person has the power and intention at any given time to exercise dominion and control over the drugs either directly or through others. State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Cooper, 736 S.W.2d at 129. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996). However, as stated above, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The circumstantial evidence must be not only consistent with the guilt of the accused, but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "'it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" Id. (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)). Further, the trier of fact may infer from the amount of the drugs, along with relevant facts surrounding the arrest, that the drugs were possessed for the purpose of selling them. Tenn. Code Ann. § 39-17-419.

In the case herein, the proof indicated that, after being contacted by Mr. Allen in jail, the appellant delivered the tobacco packages filled with .3 grams of cocaine and 23.3 grams of marijuana to Mrs. Allen at her residence. Neither Mrs. Allen nor Mr. Brodnax altered the packages in any way. Neither Mrs. Allen nor Mr. Brodnax knew that the packages contained drugs. The trier of fact was presented with sufficient evidence to convict the appellant of possession of marijuana and cocaine with the intent to sell or deliver when there was undisputed evidence introduced at trial as to the

quantity of the drugs and the delivery of the drugs by the appellant to Mrs. Allen for ultimate delivery to the jail.

We determine that the evidence is sufficient to sustain the appellant's convictions. The evidence is sufficient to support the jury's determination in that "it fairly and legitimately tends to connect the defendant with the commission of the crime[s] charged." See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994), superceded by statute as stated in State v. Stout, 46 S.W.3d 689 (Tenn. 2001). The appellant's argument regarding the weakness of the evidence points primarily to the weight of the evidence, which was to be determined by the jury. Our role on appeal is simply to determine whether the evidence was legally sufficient for any trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. We conclude that it was.

## Jury Instruction on Accomplices

Lastly, the appellant complains that the trial court committed plain error by failing to give the jury an instruction on accomplice testimony because there was "ample evidence from which the jury could infer that Martha Allen and Ernest Brodnax were accomplices." The appellant acknowledges that defense counsel failed to request an accomplice instruction at trial, but insists that the trial court committed plain error by failing to give the instruction despite the waiver. The State argues that the appellant waived the issue for failure to request the jury instruction at trial and, in the alternative, that the trial court was under no obligation to instruct the jury on accomplices where the testimony did not indicate that Mrs. Allen and Mr. Brodnax were accomplices.

In this case, the appellant challenges the testimony of Mrs. Allen and Mr. Brodnax, arguing that they were accomplices whose testimony had to be corroborated. It is well-settled in Tennessee that a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice. See State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001); Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964).

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.

Bane, 57 S.W.3d at 419 (quoting State v. Bigbee, 885 S.W.2d 797, 803(Tenn. 1994)). An accomplice is one who knowingly, voluntarily, and with common intent participates with the principal offender in the commission of a crime. State v. Lewis, 36 S.W.3d 88, 94 (Tenn. Crim. App. 2000); Conner v. State, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975). To satisfy the definition of an accomplice, it is not enough that the witness merely possess guilty knowledge, is morally delinquent, or even participated in a distinct but related offense. See State v. Lawson, 794

S.W.2d 363, 369 (Tenn. Crim. App. 1990). Rather, the test for whether a witness is an accomplice is whether the witness could have been convicted of the offense. Id. While Mrs. Allen received the drugs in the tobacco packages from the appellant for delivery to the jail, and Mr. Brodnax ultimately delivered those packages to the jail for receipt by Mr. Allen, each witness's testimony shows that none of the witnesses were actual accomplices to the conduct of the appellant or Mr. Allen. In fact, the testimony is uncontradicted that both Mrs. Allen and Mr. Brodnax testified that they thought the packages contained tobacco. The evidence is clear that none of them "knowingly, voluntarily, and with common intent participate[d] with the principal offender in the commission of [the] offenses." Lewis, 36 S.W.3d at 94.

In any event, the appellant never requested a special jury instruction on accomplice corroboration, as he was required to do when the trial court did not give one. In State v. Anderson, 985 S.W.2d 9 (Tenn. Crim. App. 1997), this Court held that because the defendant failed to make a request for an accomplice instruction, the defendant waived the issue.

> [O]ur supreme court has held that an instruction on the rule requiring corroboration of an accomplice's testimony is not fundamental. Upon the trial court's failure to instruct the jury regarding accomplice testimony and the requirement of corroboration, it becomes the obligation of the defendant to make a special request for the instruction. In the absence of a special request, the trial court does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction.

Anderson, 985 S.W.2d at 17 (citations omitted). Likewise, because the appellant in this case failed to request a special jury instruction on accomplice testimony, he waived the issue.

Again, this issue is also normally waived if not raised in a timely new trial motion. Here, however, the appellant raises that issue in the context of plain error. Trial errors rising to the level of plain error are not waived by an untimely motion for new trial. See Tenn. R. Crim. P. 52(b). In order to determine that plain error exists:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (citing State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established before plain error will be recognized. Id. at 282-83. Consideration of all of the factors is unnecessary when the record demonstrates that at least one of the factors cannot be established. Id. at 283. Furthermore, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." Id. (quoting Adkisson, 899 S.W.2d at 642).

In our view, there has been no breach of a clear and unequivocal rule of law. Because we determine that Mrs. Allen and Mr. Brodnax were not accomplices, there was no reason for the trial court to give an instruction on accomplice testimony. Moreover, as stated above, the trial court "does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction" if the defendant does not make a special request for the instruction. Anderson, 985 S.W.2d at 17. Further, the appellant has waived this issue through an untimely filing of the motion for new trial and by failing to request a special instruction on accomplice testimony. Plain error is not present.

Conclusion

For the foregoing reasons, the judgment of the trial court is reversed and dismissed in part and affirmed in part.

_____
JERRY L. SMITH, JUDGE