IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 1, 2008 Session

## HOWARD JEFFERSON ATKINS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 3956          Joseph H. Walker, Judge**

_____

**No. W2006-02221-CCA-R3-PC - Filed August 29, 2008**

_____

The petitioner, Howard Jefferson Atkins, appeals the post-conviction court's denial of his petition for post-conviction relief. On appeal, he argues that he received the ineffective assistance of counsel because: (1) trial counsel failed to pursue suppression of the petitioner's statement to police on the basis that police did not have probable cause to effectuate his arrest; and (2) appellate counsel failed to challenge the petitioner's transfer from juvenile court on appeal. After a thorough review of the record and the parties' briefs, the judgment of the post-conviction court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which John Everett Williams and Alan E. Glenn, JJ., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, Howard Jefferson Atkins.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

Following a transfer from juvenile court, the petitioner was convicted by jury of first-degree premeditated murder and sentenced to life imprisonment with the possibility of parole. This court affirmed the petitioner's conviction and sentence on direct appeal. *State v. Howard Jefferson Atkins*, No. W2001-02427-CCA-R3-CD, 2003 WL 21339263 (Tenn. Crim. App., at Jackson, May 16, 2003), *perm. app. denied* (Tenn. Oct. 6, 2003). The following is a summary of the facts of the case taken from this court's opinion on direct appeal:

On April 16, 2000, the defendant, Howard Jefferson Atkins, returned home to his mother and step-father's house after a weekend with his father. His step-father,

the victim, was outside his home when the defendant returned, and the sounds of his mother crying were audible from outside the home. The victim greeted the defendant by telling him to "[g]o in there and take care of your mother like you always do." The defendant testified that the victim had been abusing his mother throughout their relationship, which spanned four years. The defendant also testified that the victim had been emotionally abusive of him, as well, and had hit him on several occasions. After this exchange with the victim, the defendant went inside and comforted his mother, who told the defendant that she planned on divorcing the victim and wanted to leave the house soon. She later took a pain pill and went to sleep in the defendant's room.

Some time that evening, the defendant went into the victim's bedroom, where the victim was asleep. The defendant claimed that he intended to speak with the victim and ask him to leave the house for a few days so that he and his mother could leave the house peaceably. The defendant initially brought a baseball bat and chair leg with him for protection from the defendant during this conversation, but entered the victim's bedroom with only the baseball bat. The defendant testified that after several minutes of pleading, the victim refused his request and threatened to kill him. According to the defendant, the victim then reached, or so the defendant believed, for a gun which was kept in the night stand drawer. In reaction to this threat, the defendant swung at the victim with his baseball bat, hitting him between nine to twelve times in the head, killing the defendant and smashing his skull. The defendant then began to clean up the victim's blood and moved his body and bed mattress outside so that his mother would not awake to see the blood. The defendant then called his father and confessed his crime, and his father advised him to call 911. The defendant did so, and the police arrived shortly thereafter. Once the defendant opened the door, the police secured him on the front porch and asked him if there were any firearms in the house. During the time the defendant was on the front porch with a police officer, he made statements about the events that transpired that night, specifically that he hit the victim because he feared for his life and feared that the victim was reaching for a gun to shoot him.

At trial, the state introduced the testimony of police officers who had searched the crime scene and who testified that they did not locate a handgun in either of the night stands in the victim's bedroom or anywhere in the house. The state also introduced character evidence of the victim's peaceable nature, specifically testimony from his children, former wives, a cousin, a friend, and an employee. The defense introduced testimony from the defendant's father, former teachers, youth ministers, and parents of his friends, all of whom testified regarding the defendant's peaceable character. Additionally, the defendant testified on his own behalf.

*Id*. at *1-2.

The petitioner filed a timely petition for post-conviction relief. Thereafter, an evidentiary hearing was held. At the hearing, the petitioner introduced transcripts from his 911 call, statement made to police after being taken into custody, juvenile court transfer hearing, suppression hearing, and trial. The petitioner testified that on the night of the murder he was handcuffed immediately after police officers arrived at his home. The petitioner stated that he did not feel free to leave after he was handcuffed. The petitioner stated that he did not testify on his own behalf at the transfer hearing before the juvenile court judge. He noted that had he testified at the juvenile transfer hearing, his testimony would have echoed his testimony at trial.

The petitioner's trial counsel testified that he assumed representation of the petitioner after petitioner was transferred from juvenile court to criminal court. Trial counsel recalled that he pursued suppression of the petitioner's incriminating statement to police on Fifth Amendment grounds that the petitioner did not make a knowing and voluntary waiver of his *Miranda* rights. Trial counsel noted that he was unsuccessful in suppressing the petitioner's statement but thought the "whole trial would have taken on a different complexion" if the statement had been suppressed. Trial counsel acknowledged that he did not pursue suppression of the petitioner's statement on Fourth Amendment grounds that the petitioner's statement to police was a product of an illegal detention without probable cause. Trial counsel noted that he did not identify a viable Fourth Amendment issue at the time. Trial counsel recounted that he thoroughly investigated the case. He further recounted that the defense theory at trial was that the petitioner killed his stepfather in self-defense.

The petitioner's appellate counsel testified that he represented the petitioner on direct appeal. He recalled that he raised a number of issues on appeal but did not raise a challenge to the petitioner's transfer from juvenile court to criminal court. He agreed that the attorney who represented the petitioner at the transfer hearing presented a fair amount of mitigation proof. However, appellate counsel said he did not think the propriety of the transfer was a viable issue on appeal.

The petitioner's pre-trial counsel testified that she represented the petitioner at the juvenile transfer hearing. She recalled that the evidence introduced at the hearing included the petitioner's statement to police and the testimony of one of the investigating officers. She recalled that physical evidence indicated the attack took place in the victim's bedroom where he was alone and asleep before being confronted by the petitioner. However, she noted that the petitioner's 911 call indicated that he acted in self-defense.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court held that the petitioner failed to prove he received the ineffective assistance of counsel at trial and on appeal.

**ANALYSIS**

*I. Standard of Review*

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

In order to establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id.* at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.* In considering claims of ineffective assistance of counsel, "[w]e address not what is prudent or appropriate, but only what is constitutionally compelled." *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

### II. Motion to Suppress

On appeal, the petitioner first contends that he received the ineffective assistance of counsel because his trial counsel failed to pursue suppression of his statement to police on the alternative basis that police did not have probable cause to effectuate the petitioner's arrest. The petitioner asserts that his statement given to police while in custody was a critical piece of evidence and had it been suppressed as tainted evidence of an illegal detention he would not have been transferred from juvenile court to criminal court and convicted of first degree murder in criminal court.

We begin our review by reiterating that it is the petitioner who bears the burden in a post-conviction proceeding to prove his factual grounds for relief by clear and convincing evidence.

-4-

At the post-conviction hearing, trial counsel testified that he pursued suppression of the petitioner's incriminating statement to police on Fifth Amendment grounds that the petitioner did not make a knowing and voluntary waiver of his *Miranda* rights. Trial counsel also testified that he did not identify a viable Fourth Amendment issue. In its order denying relief, the post-conviction court accredited the testimony of trial counsel and found that the petitioner failed to show how trial counsel was deficient in failing to litigate the Fourth Amendment issue at the suppression hearing. We agree.

It is well-settled that a police officer may arrest a person without a warrant in a number of situations, including "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed the felony." Tenn. Code Ann. § 40-7-103(a)(3). The record in the instant case reflects that the petitioner called 911 and told the operator, "We had a fight and he [the victim] told me he was going to kill me and he was going for the gun and I killed him." Prior to arriving at the scene, police officers were informed that a domestic dispute involving the petitioner had resulted in a possible homicide. When the police officers arrived at the scene they observed the victim's body in the yard. The 911 operator informed the officers first on the scene that the petitioner would come to the front door. Once the petitioner opened the door, the police secured him with handcuffs on the front porch and asked him if there were any firearms in the house. While secured on the front porch, the petitioner freely made unsolicited statements about the events that transpired, specifically that he hit the victim because he feared for his life and feared that the victim was reaching for a gun to shoot him. Therefore, contrary to the petitioner's assertion, the evidence of record clearly supports the fact that police officers had probable cause to initially detain the petitioner and then arrest him. *See State v. Lewis*, 36 S.W.3d 88, 97 (Tenn. Crim. App. 2000) ("Probable cause is 'a reasonable grounds for suspicion, supported by circumstances indicative of an illegal act.'").

In arguing the lack of probable cause to arrest, the petitioner submits that the police officer's probable cause was somehow negated due to the exculpatory nature of the petitioner's statements, i.e., that he acted in self-defense. We disagree. While officers are not free to ignore plainly exculpatory evidence that tends to exonerate the suspect, arresting officers are not required to conduct a mini-trial before initiating an arrest. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996). Indeed, a police officer " is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). Rather, probable cause to arrest exists if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *See State v. Bridges,* 963 S.W.2d 487, 491 (Tenn. 1997); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964). As previously noted, the record establishes that police officers had probable cause to arrest the petitioner.

Even assuming *arguendo* that trial counsel was deficient in failing to pursue suppression of the petitioner's statement to police on Fourth Amendment grounds, the petitioner has failed to show there is a reasonable probability that the outcome of the proceedings would have been different. Significantly, the record reflects that the petitioner's written statement to police is similar to the

statement he made during his 911 call and the spontaneous statement he made to police at the time of his arrest. Also, the state presented physical evidence establishing: (1) the victim suffered between nine and twelve forceful blows to the head and hands; (2) the victim was in his underwear when he was attacked; (3) the victim's bed was soaked in blood, and there was blood spatter all over the victim's bedroom; (4) no gun was found in the victim's bedroom; and (5) the murder weapon was a 30 inch-long baseball bat. Outside of his custodial statement to police, the petitioner twice made statements admitting that he killed the victim and these statements were admissible at trial. Moreover, the petitioner acknowledged at trial that he killed the victim but asserted that he did so in self-defense. As such, it is clear that the petitioner was not prejudiced at trial by the admission of his custodial statement to police. Likewise, the petitioner has not proven that the admission of his statement to police would have changed the outcome of the juvenile transfer proceedings. As noted, the state had evidence that the petitioner killed the victim by beating him with a baseball bat. Throughout the various proceedings, including the juvenile transfer hearing, the petitioner through counsel averred self-defense. Therefore, the exclusion of the petitioner's statements indicating he killed the victim in self-defense would have belied the petitioner's theory of self-defense and simply strengthened the state's case that the victim died from an intentional and vicious beating and the petitioner was the one who did it. Therefore, we conclude that the evidence in the record does not preponderate against the post-conviction court's findings that trial counsel was not deficient in failing to litigate this particular issue at the suppression hearing. The issue is without merit.

## II. Appeal of Juvenile Transfer Hearing

The petitioner next contends that his appellate counsel was ineffective in failing to challenge the juvenile court's transfer decision on appeal. However, other than asserting that substantial mitigating evidence was presented at the transfer hearing, the petitioner fails to make argument as to why he would have been successful on appeal had the issue been raised.

In its order denying relief, the post-conviction court found that appellate counsel's performance on appeal was within the range of competence demanded of attorneys in criminal cases. The court also noted that the petitioner failed to show a reasonable probability that, but for appellate counsel's error, the result would have been different.

A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful. *See e.g., State v. Robbins*, 528 U.S. 259, 285 (2000). If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, the reviewing court must determine the merits of the issue. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). If an issue has no merit or is weak, counsel's performance will not be deficient for failure to raise it, and the petitioner will have suffered no prejudice. *Id.* Appellate counsel is not constitutionally required to raise every conceivable issue on appeal, and the determination of which issues to raise is generally within counsel's sound discretion. *Id.* "[A reviewing court] should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight. Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases." *Id.* (citations omitted).

The juvenile court has original jurisdiction over children who are alleged to be delinquent. Tenn. Code Ann. § 37-1-134; *see also Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006). Tennessee Code Annotated section 37-1-134(a)(1)-(4) provides the circumstances in which a juvenile court shall transfer a juvenile accused of conduct that constitutes a criminal offense to the criminal court to be tried as an adult. As relevant here, the juvenile must be at least sixteen years old at the time of the offense and be provided with notice and a hearing. Tenn. Code Ann. § 37-1-134(a)(1)-(3). During the hearing, the juvenile court must find "reasonable grounds to believe" that the juvenile committed the delinquent act as alleged, that the juvenile "is not committable to an institution for the mentally retarded or mentally ill," and that the community's interests require legal restraint or discipline of the juvenile. *Id.* at (a)(4)(A)-(C). When making the determination of whether or not to transfer the juvenile to be dealt with as an adult, the juvenile court shall consider the following factors: "(1) [t]he extent and nature of the child's prior delinquency records; (2) [t]he nature of past treatment efforts and the nature of the child's response thereto; (3) [w]hether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (4) [w]hether the offense was committed in an aggressive and premeditated manner; and (5) [t]he possible rehabilitation of the child by use of procedures, services and facilities currently available to the court in this state. . . ." Tenn. Code Ann. § 37-1-134(b)(1)-(5).

At the juvenile transfer hearing, the state presented evidence that the petitioner, a juvenile, armed himself with a baseball bat, awoke the sleeping victim, told the victim to leave the house, and then beat the victim to death with the bat. The petitioner admitted to killing the victim but said he did so in self-defense. The state noted that the petitioner did not have a prior record of delinquency. The defense presented evidence that the victim was abusive and the petitioner feared the victim. The defense also presented substantial mitigating evidence that the petitioner was a good student, a positive, peaceful person, and was not defiant, violent, or confrontational. At the conclusion of the hearing, the juvenile court carefully considered all the evidence and held that the state demonstrated probable cause to believe that the petitioner committed the delinquent act of murder and it was done in an aggressive manner. The court also noted that despite the favorable mitigating evidence presented by the defense, the community's interests required legal restraint or discipline of the petitioner.

Upon review of the record, we discern no abuse of discretion by the juvenile court in finding reasonable grounds to transfer the petitioner from juvenile court to criminal court to be tried as an adult. As the evidence in the record does not preponderate against the juvenile court's decision, it logically follows that the petitioner would not have prevailed on direct appeal of this issue and appellate counsel was not deficient in failing to raise it. Therefore, we conclude that the record does not preponderate against the post-conviction court's findings that the petitioner failed to prove either deficient performance of appellate counsel or prejudice to the petitioner's appeal. Accordingly, the petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the post-conviction court denying post-conviction relief.

_____
J.C. McLIN, JUDGE